FILED

18 APR 27 PM 4:34



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROY A. HIGGS, INDIVIDUALLY AND ON BEHALF OF INSPECTION MANAGEMENT SYSTEMS, INC., APPELLANT, | § § § § § | |
| V. | § § § | CAUSE NO. 1:17-CV-572-LY |
| RUSSELL WADE COLLIAU, APPELLEE. | § § § | |

## MEMORANDUM OPINION AND ORDER

This cause is an appeal of an order entered on May 24, 2017, by the United States Bankruptcy Court for the Western District of Texas, Austin Division. Before the court are Appellant's Opening Brief filed September 21, 2017 (Dkt. No. 10), Appellee's Responsive Brief filed October 20, 2017 (Dkt. No. 11), and Appellant's Reply Brief filed November 12, 2017 (Dkt. No. 12). Having carefully considered the briefs, applicable law, and record on appeal, the court concludes that the bankruptcy court's orders should be affirmed in part and modified in part for the reasons to follow.

## I. BACKGROUND

For brevity's sake, the court adopts the facts as set out by the bankruptcy court, except where factual findings have been challenged by Higgs.

Higgs raises eight issues in his opening brief: (1) the bankruptcy court erred when it did not apply the doctrine of collateral estoppel and res judicata; (2) the bankruptcy court erred in allowing Colliau to present evidence that was not admitted in his state court proceeding; (3) the bankruptcy court erred in its determination about the California discovery referee; (4) the bankruptcy court erred in its determination that Higgs was not damaged from Colliau's

representation about Higgs's shares; (5 & 6) the bankruptcy court erred in finding that Higgs was not damaged when Colliau allegedly diluted Higgs's interest and thus erred in the amount of damages awarded to Higgs; (7) the bankruptcy court erred in finding that Colliau made a loan instead of a capital contribution; (8) the bankruptcy court erred in finding that Higgs received his fair share of dividends.[1]

## II. STANDARD OF REVIEW

The district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and conclusions of law *de novo*. *Matter of Berryman Products, Inc.*, 159 F.3d 941, 943 (5th Cir. 1998). Mixed questions of fact and law are subject to *de novo* review. *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003). The bankruptcy court's evidentiary rulings are subject to review for abuse of discretion. *In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 239 (5th Cir. 2006).

## III. ANALYSIS

### 1.

Whether the bankruptcy court should have applied the doctrines of collateral estoppel and res judicata is a question of law reviewed *de novo*. *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 549 (5th Cir. 2013).

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery*

---

[1] Higgs initially raised thirteen issues in his notice of appeal. However, he chose to brief eight of those issues. The court will consider only those eight issues raised in his briefing.

2

*Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Though the bankruptcy court and Higgs considered the two doctrines together,[2] the doctrines are conceptually distinct:

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Id.* at 327 n.5. Thus, res judicata is focused on relitigating the same cause of action; collateral estoppel is focused on relitigating issues previously adjudicated in a different action.

The bankruptcy court rightly focused its analysis on collateral estoppel. This is a second action in bankruptcy, in which Higgs seeks to invoke a previously entered default judgment in California state court to determine dischargeability in bankruptcy. The court will thus proceed in analyzing the issue under the doctrine of collateral estoppel.

A determination of whether debt is nondischargeable is a "matter of federal bankruptcy law, not state law." *Matter of Dennis*, 25 F.3d 274, 277 (5th Cir. 1994) (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991). But principles of collateral estoppel apply equally to dischargeabiltiy proceedings. *Grogan*, 498 U.S. at 284 n.11; *Matter of Schwager*, 121 F.3d 177, 181 (5th Cir. 1997). The preclusive effect of a California state court default judgment is determined by California law. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Matter of Schwager*, 121 F.3d at 181. In California, a court may apply the doctrine collateral estoppel if the following five factors are met:

---

[2] Both the bankruptcy court and Higgs styled headings in these sections to include res judicata and collateral estoppel, but both of their analyses are focused on collateral estoppel.

> [T]he issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001). The party asserting collateral estoppel bears the burden of establishing each of these requirements. *Id.* In addition, the court must find that the "application of preclusion furthers the public policies underlying the doctrine." *Id.*

### A. Privity

In California, privity is exists where there is "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." *Gottlieb v. Kest*, 141 Cal. App. 4th 110, 149 (2006) (internal punctuation and emphasis omitted). Courts look to whether a non-party is sufficiently close to an unsuccessful party in a prior action to justify the application of collateral estoppel against the non-party. *Id.* Finally, "the determination of privity depends upon the fairness of binding [a party to the present proceeding] with the result obtained in earlier proceedings in which it did not participate," which "requires close examination of the circumstances of each case." *Id.* at 149–50. The requirement of privity arises out of a due process concern and serves to ensure that a non-party has "an identity or community of interest with, and adequate and zealous representation by, the party in the first action." *Id.* at 150.

#### i. State Court Default Judgment and Bankruptcy Proceedings

Higgs brought a shareholder derivative action in California state court against Inspection Management Systems, Russell Colliau, Marci Colliau, United Professional Real Estate Inspectors, Inc., Mold Detectives, Inc., and Husbands for Rent, Inc.

4

In California, a court may enter default judgment for conduct that misuses the discovery process. *See* CAL. CIV. CODE § 2023.030. A discovery referee recommended entering default judgment against United Professional Real Estate Inspectors, Mold Detectives, and Husbands for Rent[3] because these defendants "intentionally and in bad faith refused to produce documents." The referee recommended an entry of default judgment because "the only effective sanction as to these corporate defendants is entry of default judgment. . . . [t]he documents that defendants refused to produce were crucial to proving both liability and damages" against the corporate defendants. The referee did not recommend entering default judgment against Inspection Management Systems because it produced responsive documents. The discovery referee also declined to recommend entering default judgment against Colliau under an alter ego theory, despite his conclusion that Colliau "played a central role" in the corporate defendants' refusal to produce documents.

Higgs objected to the discovery referee's conclusion not to enter default against Colliau and requested that the state court also enter judgment against Colliau and his wife, Marci. The state court declined to do so, stating that:

> [The discovery referee] noted in the Recommendations that as the court has refused to allow plaintiff to pursue an alter ego theory against the individual defendants, it would not be appropriate to order an entry of default judgment against Russell Colliau. This finding is supported. The operative complaint in this action contains no allegations of alter ego liability, and the court declined to permit plaintiff to amend his complaint to add such allegations. It is not appropriate to enter terminating sanctions against Russell Colliau in his individual capacity.

---

[3] United Professional Real Estate Inspectors, Inc., Mold Detectives, Inc., and Husbands for Rent, Inc. were owned by Colliau and will be referred to as "corporate defendants" unless otherwise noted or as needed for context. Inspection Management Services will be referred to individually.

The state court did, however, adopt the recommendation of the discovery referee and entered default against the corporate defendants for fraud, misappropriation, and conspiracy to commit fraud and misappropriation. After default was entered, Higgs filed a motion to amend the default judgment to add Colliau as a judgment debtor. This motion was denied because granting it would not resolve all causes of action against Colliau. Higgs then dismissed several causes of action and filed another motion to amend the default judgment to add Colliau. The state court again denied Higgs's motion on due process grounds, stating that:

> [D]efault judgments have been entered against the Corporate Defendants. However, Colliau answered the complaint, remains a party in the action, and has been actively litigating his defenses and cross-claims against Higgs. Terminating sanctions were requested, and denied, as against Colliau. Higgs also provides very little evidence regarding Colliau's control of the litigation with respect to the Corporate Defendants. . . . While the Corporate Defendants have lost their ability to participate in defense of this action, Higgs does not provide adequate justification to remove Colliau's right to defend against the claims made against him personally.

Colliau then filed a motion for summary judgment in which he asserted that the judgment against the corporate defendants should be binding on Colliau based on the principles of res judicata and collateral estoppel. That motion was pending in state court when the Colliau's filed for Chapter 7 bankruptcy in the Western District of Texas.

In the bankruptcy proceedings, Higgs filed a motion for summary judgment arguing that the default judgment entered against the corporate defendants in the California litigation should be applied to Colliau individually through the doctrine of collateral estoppel. The bankruptcy court declined to apply the default judgment to Colliau because it concluded there was a lack of privity between the defaulted corporate defendants and Colliau. In so concluding, the bankruptcy court placed weight on the conclusions drawn by the referee that the interests of

Colliau and the corporate defendants diverged. The bankruptcy court found that "on four occasions, the California state court system refused to hold Colliau responsible for the failure by his corporations to produce documents, on the basis that his interests diverged from the interests of his defunct companies."

The only additional evidence presented to the bankruptcy court to support privity between Colliau and the corporate defendants was a stipulation that Colliau and his companies were represented by the same counsel and received one, rather than separate, bills for this representation. The bankruptcy court concluded this evidence was not enough to establish privity between Colliau and the corporate defendants.

On appeal, Higgs argues that Colliau's active involvement in the litigation on behalf of the corporation in both the state court and bankruptcy court is proof that Colliau's interests were adequately represented by the corporate defendants. Higgs points out that Colliau verified the corporate defendants' answers, verified discovery responses submitted by the corporate defendants, signed declarations submitted by the corporate defendants, jointly filed motions with the corporate defendants, and jointly filed objections to the discovery referee's recommendations.

### ii. Analysis

The central question is whether Colliau, the sole shareholder of the defaulted corporate defendants, was in privity with those companies such that it would be fair to bind him to the default judgment. After conducting a "close examination" of the circumstances of this case, the court concludes that answer is no. *Gottlieb*, 141 Cal. App. 4th at 149–50. Colliau cannot fairly

be considered to be in privity with his defaulted companies because Colliau's interests diverged from those of his companies in the litigation.

First, it is important to note that default judgment was entered against the corporate defendants because of intentional discovery violations. The state court determined that Colliau was not "sufficiently close" to his defaulted companies such that it would be fair to hold Colliau in default for his corporations discovery violations. The state court did so despite recognizing that Colliau had some culpability in the discovery dispute violations. The court nonetheless concluded that this was an insufficient amount of control to hold Colliau wholly liable by applying the default judgment to Colliau.

The additional evidence presented to the bankruptcy court that Colliau and his companies are represented by the same counsel is not enough to establish "an identification in interest of one person with another as to represent the same legal rights." *Id.* This evidence corroborates the referee's findings that Colliau played a central role in the context of one particular discovery dispute, but falls short of proving a complete privity of interests between Colliau and the defaulted defendants. Moreover, despite the fact that the same counsel represented Colliau and his companies, one of the companies (Inspection Management Systems) chose to respond to discovery requests while others did not. Litigation is still ongoing in California state court, which is in the best position to hear evidence on the complaint and any possible alter ego liability.

Higgs relies on *Gottlieb* as support for the proposition that a closely held corporation is not a distinct entity from its shareholders such that one opportunity to litigate issues that concern both of them will protect both for the purposes of collateral estoppel. 141 Cal. App. 4th 110. In

*Gottlieb*, a participant in real estate venture sued his co-participant for breach of contract. The co-participant filed a cross-complaint against the participant and his companies. The participant answered the cross-complaint but the participant's companies did not, and the court rendered default judgment against the companies. The co-participant sought to apply the default judgment to the participant under a theory of collateral estoppel. In dicta, the court stated that

> [f]or the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be *presumed that their interests coincide* and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

*Id.* at 151 (emphasis in original). The court reasoned that "when the corporation is the party to the litigation, a controlling owner who participates in the conduct of the litigation ordinarily has full opportunity and *adequate incentive* to litigate issues commonly affecting him and the corporation." *Id.* at 151–52 (emphasis in original). Despite this dicta, the court did not apply these principles to the parties in *Gottlieb*, concluding that:

> Gottlieb could not have reasonably expected to be bound by the default judgment entered against his legally distinct companies, especially given that his interests diverged from theirs. After all, he filed an answer; they did not. Gottlieb did not have the requisite proprietary or financial interest in defending the claims against the defunct companies, and the companies cannot be fairly treated as having represented him.

*Id.* at 156.

So too here. As the state court and the bankruptcy court both concluded, it would be unfair to bind Colliau to the default judgment entered against the corporate defendants because of their discovery violations. Much like the defendants in *Gottlieb*—one who filed an answer and a company that did not—the actions of Colliau and Inspection Management Systems show that their interest diverged in a very concrete way with the corporate defendants, despite having

9

the same lawyer. Colliau and Inspection Management Systems were responsive in the discovery process; the corporate defendants were not. Thus, in this case, it cannot be said that the corporate defendants represented the interests of either Colliau or Inspection Management Systems.

Higgs also relies on *In re Gottheiner*, in which the court held that "when a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest [to support a finding of privity]." *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983). However a presumption is just that—and the state court on at least four occasions declined to permit Higgs to amend his complaint or issue terminating sanctions against Colliau.

Ultimately, Higgs seeks to do in this court what he was unsuccessful in doing in state court—that is, holding Colliau liable for the default judgment entered against the corporate defendants. In state court Higgs sought to hold Colliau liable for the default judgment by asserting a collateral estoppel and alter ego theory in a variety of motions and pleadings. In this court and in the bankruptcy court, he attempts to do so by invoking the doctrine of collateral estoppel.

A party seeking to invoke collateral estoppel bears the burden of proving that all elements of collateral estoppel are met. Because Higgs has failed to show that there was privity between Colliau and the corporate defendants, the court will not consider whether the issue was identical, actually litigated, and necessarily decided.

**2.**

Higgs argues that the bankruptcy court should not have admitted evidence that Colliau "refused to produce in the California litigation." Whether the bankruptcy court properly admitted evidence that Colliau was not allowed to use in the California litigation is reviewed for abuse of discretion. *In re SGSM Acquisition*, 439 F.3d at 239.

Higgs does not identify particular exhibits to which he objects; nor does he point to a place in the record in which his counsel objected to their admissibility. In his reply brief, Higgs refers to "any and all documents that fall into the 11 categories of documents that were requested by Higgs in the California [l]itigation that led to the terminating sanctions shall not be allowed in the bankruptcy court proceedings." Higgs states that "the 30,000 documents referred to in Item 8 of the [Colliau's] answer brief are the documents that Colliau refused to produce in the California litigation and should not be allowed in the bankruptcy litigation." Item 8 of the Colliau's answer brief refers to 30,000 pages of documents in the adversary proceeding, including the QuickBooks records for Inspection Management System and all three Corporate Defendants and supporting documents. It appears to the court upon review of the record that the exhibits to which Higgs objects were offered as joint-exhibits in the bankruptcy court. Admission of joint-exhibits was not an abuse of discretion by the bankruptcy court.

**3.**

On appeal, Higgs argues that the bankruptcy court questioned and overruled the state court when it determined that "that the documents produced in the California litigation were not sufficient." The passage that Higgs objects to in the memorandum order reads as follows:

> Indeed, the records seemed quite complete, in that the parties were able to reproduce not only records of transactions as recorded in the various accounts, but

11

actual documentation as well. It is hard to imagine that the QuickBooks files for Colliau's other entities were not as complete, and equally hard to imagine how Higgs's expert came to possess a disc that contained no information.

Higgs's objection is meritless. The bankruptcy court did not make any findings that the discovery referee made an improper ruling and the bankruptcy court in no way overruled the findings of the discovery referee. The quoted passage appears in the section of the memorandum opinion giving background on the state court proceedings. Thus, the court concludes that the bankruptcy court did not abuse its discretion in making the above referenced statement in its memorandum opinion.

4.

Higgs next argues that the bankruptcy court erred in finding that there were no damages to Higgs "from Colliau's representation that Higgs only owned 39 shares." Higgs alleges he was damaged by the false representation of "only owning 39 shares by the Schedule K-1's that Colliau caused IMS to issue to Higgs." He further argues that "Colliau sent such fraudulent Schedule K-1's to Higgs during the bankruptcy proceedings and it is Appellant's belief that in doing so Colliau falsified recorded information, committed fraud against Higgs, and tax fraud during the course of the bankruptcy."

Higgs's argument is not an objection to any conclusion made by the bankruptcy court. Instead, Higgs's claim of damages by allegedly false representations that affected Higgs's tax returns is an argument raised for the first time on appeal. Higgs's K-1's and tax returns were not offered nor admitted into evidence, though he indicates in a footnote that he received the complained of K-1's as early as 2010. The court will not consider arguments raised for the first time on appeal. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir.

2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal."). As such, this argument has been waived.

### 5. & 6.

Higgs states that the bankruptcy court erred in finding that there were no damages to Higgs when Colliau issued himself 50,000 shares and diluted Higgs's ownership in Inspection Management Systems. Though Higgs states the issue as one of "damages," his arguments indicate that he is actually objecting to the bankruptcy court's conclusion that Colliau's issuance of new stock did not constitute "actual fraud" under the Bankruptcy Code. Because a document filed *pro se* should be liberally construed, this court will review that conclusion of law *de novo*.

Under the Bankruptcy Code an individual debtor is not discharged from debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Proof of actual fraud does not require a false representation if there was a transfer scheme designed to hinder the collection of debt. *Husky Int'l Elecs., Inc. v. Ritz*, ___ U.S. ___, 136 S. Ct. 1581, 1586 (2016). In the bankruptcy court, Higgs argued that Colliau committed actual fraud when he issued additional stock in violation of the company bylaws.[4] The bankruptcy court concluded that this did not constitute actual fraud because only one director was required to approve the issuance of stock. Higgs would not have been able to change the result as a minority

---

[4] Two competing sets of bylaws were at issue in the bankruptcy court determined that that "the Nevada bylaws govern here" based on weighing the credibility of testifying witnesses and competing evidence. That finding is not challenged on appeal.

13

shareholder, and Higgs had notice of the meeting and did not attend or object to the sale. The bankruptcy court correctly determined that Higgs could not object to the issuance of new stock in the bankruptcy court when he did not object to its issuance when given the opportunity in the first instance.

Higgs further argues that Colliau's breached his fiduciary duty to Inspection Management Services. Because the breach of fiduciary duty argument was not raised in the court below, the argument is waived. *See Martco Ltd. P'ship*, 588 F.3d at 877. Accordingly, the court need not consider issue six, which as Higgs states is relevant only "if it is determined that Colliau breached his fiduciary duty by issuing himself 50,000 shares," which this court has not so determined.

7.

Higgs argues that the trial court erred in finding that Colliau made a loan to Inspection Management Systems instead of a capital contribution. Higgs contends that this is a question of law that is reviewed *de novo*, but Higgs argues whether the amounts were loaned or contributed is a question of fact subject to the clearly erroneous standard. The court agrees this is a matter of fact subject to a clearly erroneous standard.

In determining whether the $100,000 given to Colliau is a loan or a contribution, the court weighed conflicting evidence and testimony. The court noted the inconsistency in Inspection Management System records as to whether the money was a loan or a contribution and inconsistent testimony. The bankruptcy court concluded that:

> In all Colliau's testimony regarding the events that led to the formation of IMS was far more credible than that of Higgs. Additionally, his testimony about the bylaws aligns far more closely to what the actual corporate documents say. And, his testimony about the software aligns with the filings made with the Patent

14

Office, whereas Higgs's testimony does not. Finally, as described below, Colliau's testimony about the expenses was far more credible than [was] Higgs's. Taking all this into consideration, as well as the testimony of Higgs and Colliau on this issue, the payments that total approximately $113,000 were repayments of a loan.

The bankruptcy court is in the best position to weigh conflicting evidence, hear the testimony of the witnesses, and determine that Colliau's testimony was far more credible than Higgs's testimony. This determination was not clearly erroneous.

Higgs asks this court to apply an eleven factor test to determine whether or not loan was a capital contribution. These arguments were not raised in the bankruptcy court and the court will not consider them for the first time on appeal.

**8.**

The final issue on appeal is whether the bankruptcy court erred in determining the amount of dividends to which Higgs is entitled under the shareholder agreement. The bankruptcy court found the following:

> Higgs says IMS's records show additional unequal distributions of $25,588 (74.7%) in dividends paid to Colliau and $8,670 (25.3%) paid to Higgs. He contends that he was shorted $7,225 in dividends. However, IMS's records also show that Higgs received an additional $6,500 from IMS in the form of a loan in 2008. IMS then credited a distribution to Higgs to repayment of this loan. According to Colliau, the accountant converted the $6,500 in the books from a payment to a note receivable at Higgs's request because Higgs did not want to report the income for tax reasons. Higgs denies receiving the $6,500 or knowing about the loan. Once again, Colliau's testimony was more persuasive and with the $6,500 properly treated as a dividend, IMS paid dividends to the shareholders in amounts that were very close to their respective percentages of ownership in IMS.

On appeal, Higgs states that the Inspection Management Systems Quickbook records show that Colliau actually received a total of $17,160.76 in dividends instead of $25,588. Higgs says that $25,588 figure appeared in a post-trial brief and that he has no idea how his attorney

15

calculated this amount. However, Higgs testified on direct examination that *he* came up with the $25,588 figure:

> So just actual dividends, *I calculated* 25,588.20 paid to Colliau and 8,670 paid to myself, which would put the ratios at 74.7 percent for Colliau and 25.3 for myself, so that's not the 39/61 that it should be.

Because this was a number that Higgs himself testified that he calculated and it was accepted by the bankruptcy court, this court will proceed as if $25,588 is the amount of dividends paid to Colliau. This court also relies on the bankruptcy court's credibility determination that "Colliau's testimony was more persuasive" that $6,500 paid to Higgs is properly treated as a dividend and not a loan. With $6,500 added to the total, the court believes the numbers come out as follows:

| Dividends Paid to Colliau | $25,588 |
| Dividends Paid to Higgs | $8,670 + $6,500 = $15,170 |
| **Total Amount of Dividends Paid** | $40,758 |

Applying the 39% to 61% split, the correct division of dividends should have been $24,862 to Colliau and $15,895 to Higgs. This means that Colliau was paid $726 more than he was entitled to and Higgs $725 less than he was entitled to.

The bankruptcy court recognized that "if these numbers are correct, Higgs received $725 less than he should have received." Nonetheless, the bankruptcy court concluded that "IMS paid dividends to the shareholders in amounts that were very close to their respective percentages of ownership in IMS." Colliau's only argument in response is that "after years of litigation, Higgs contends that he should be awarded the grand sum of $1,404 to make up the difference that he should have been paid in dividends. Apparently even Higgs concedes that the dividends paid to

the respective parties were indeed very close." Very close is not close enough. Neither the bankruptcy court nor Colliau provide a reason why Higgs is not entitled to the $725 he was shorted. Accordingly, the court concludes that Higgs is entitled to an additional $725. Accordingly,

**IT IS THEREFORE ORDERED** that this case is **REMANDED** to the bankruptcy court for proceedings not inconsistent with this opinion.

SIGNED this _17th_ day of April, 2018.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE